Good morning, Your Honor. Ken Bache with the law firm of Gradian Associates on behalf of the appellant, Fiona Strashoon. I'd like a couple minutes left over for rebuttal. Sure, just keep an eye on the clock. Okay, thank you, Your Honor. This is an ERISA case arising out of my client's employment with the predecessor to Northrop Grumman Corporation. Most of the facts are not disputed. Some of the determinations by the district court, however, are. I think it's very clear that the district court, in granting summary judgment, made several errors of law and fact. And based on those errors, the summary judgment should be reversed. First of all, the district court found that the service center was not acting as Northrop Grumman's agent. The facts provided were clearly enough that a trier of fact could find that the service center was acting as Northrop Grumman's agent. In looking at the opposing papers, that's not disputed. The second issue is that the lower court found that the Northrop Grumman Corporation and the service center weren't acting in a fiduciary capacity. When my client asked, if I take early retirement, how is this going to affect my long-term disability benefits, there was nothing in the retirement plan which addressed this issue. She was in the TRW long-term disability plan, is that right? Yes. And that's administered by an insurance company? Unum Corp. Unum Provident? Yes. So she doesn't call up Unum Provident and say, what happens if I retire early with Northrop Grumman? No, because she was instructed by Northrop Grumman to contact their employee benefits center if she had any questions regarding her benefits. But what do they know about what Unum Provident is going to do? She didn't know. Well, I mean, why would you ask Northrop Grumman what Allstate Insurance is going to do or Progressive Insurance is going to do? I mean, it seems to me she has every right to call Northrop Grumman and say, tell me about what I can do and not do under Northrop Grumman, but what does that have to do with how Social Security or somebody else is going to react to her election? Well, it's the Northrop Grumman long-term disability plan. And she was told regarding her employee benefits to contact the employee benefits center. But there's another person she could have called. There is another person she could have called. And if you look at the page 88 of the record excerpts, it shows that Northrop Grumman acknowledges that it should have told her to contact Unum. And in the future, it would tell all people to contact Unum. But that's not what she was told to do? Suppose she calls up and says, I want to know how this is going to affect my Social Security. She can't bind Social Security. No, but Unum shouldn't give her advice as a fiduciary regarding how it's going to affect her Social Security without expecting her to rely on it. Okay, now you want, if I understand correctly, you want us to hold that the term of the plan that says you can't change your mind about an early retirement election, that they should be stopped from enforcing that term. Is that it? Actually, what that provision actually states, I had it here. I think you looked at, is that ER 63? Yeah, what it actually states is that the form of payment election and the designated joint survivor beneficiary cannot be changed after the election date. It's our position that that's ambiguous. What's ambiguous about that? Well, it could be interpreted, one, that A, the form of payment election, which is either to accept everything in a lump sum or to accept monthly payments, and the beneficiary cannot be changed after the retirement date. It doesn't say that the election to take early retirement cannot be changed after the election date. Let's assume for the sake of discussion, you say it's ambiguous. Let's suppose we say it's not ambiguous. Then what? Are you, is your goose cooked? No. I think still the whole premise of equitable estoppel is that we do what's right under the particular facts of the case. And under the particular facts of this case, where she was induced to take early retirement based on faulty information given by the fiduciary, the fiduciary can't now say, well, you're stuck with it. That's not fair. That's not equity. This is an issue where... Well, you know, those claims are made very often when somebody tries to vary the terms of a plan. Well, if you look at the... If a plan is not ambiguous, basically, you can't just vary them for one person. That's all. Well, if you look at the cases that talk about that, the first one is the Greenie case. And in the Greenie case, the written plan provisions specifically provided that coverage would end at the last day of employment. The employee understood it to be 30 days after the last day of employment, which varied from the specific terms of the plan. And what the court said is that you can't have an estoppel where the representation would enlarge the employee's rights beyond what he could have recovered under the unambiguous language of the plan. Here, we are not asking for more than what she could get under the unambiguous terms of the plan. She was entitled to retirement benefits. Suppose you win here today. Yes. And they say, okay, you can't change your mind after all about your election. Mm-hmm. You still have to go back to Unum Provident. Is that right? What would happen is, first of all, she would have to return the early retirement benefits that she received. From? From the employment benefits. From Northrop Grumman. From Northrop Grumman. Then, having not taken early retirement, she would be entitled to payment from Unum for a long term... Is that what Unum says? Or is that your surmise? That is my surmise. So there would basically be an offset that the net to her would be a few thousand dollars greater. Exactly. If Unum lets you reopen their claim. Correct. Which may or may not happen. Which may or may not happen. She may be out that money. But she's willing to take that risk because, in the long run, her retirement benefits are significantly cut by the take of early retirement. I just want to make sure I understand the practicality of this. It would not be inconceivable that she could pay back the money to Northrop Grumman and not be able to get her back benefits from... It is not inconceivable. It would put her in a worse position than she is now. Not necessarily. She would have to pay back the money. But she would get a greater benefit later. Exactly. Depending on her life, how long she lives, it could be exceedingly more. Is this a case that, in your view, would benefit from the services of our mediation unit? We've tried that, Your Honor, but it didn't work. That's fine. If you look at the Paschota case, in that case, the plan was specifically amended to put a cap on benefits. Therefore, there was specific language in the plan that said there's a cap on benefits. In the Parker case, there are plans that were specifically provided that employees were not entitled to benefits if they were given an appropriate position after divestiture. There was a specific provision in the plan that conflicted with the advice given to the employee. Similarly, in the Watkins case, there was express provisions of the plan that, when finalized, contradicted representations that had been made earlier to the employee and it was held that the later plan provisions took precedence. However, in this case, there is no provision in the pension plan saying what happens when you take early retirement to your long-term disability benefits. There is no conflicting language here. Let me ask you about the problem with not getting a copy of the written terms of the plan. Yes. My understanding is that, is it Mr. Strachan, Ivan requested over the phone a copy of the plan? Yes, Your Honor. And it was not in writing? Yes, Your Honor. What is the significance of the fact that it's not in writing? Significance of the fact that it was not in writing is not, in our opinion, significant because he later put in writing the fact that he had done that. Put in writing that he had done what? That he had asked for the plan document. Who did he put it in writing to? To Northrop Grumman in both of his letters to Northrop Grumman after the fact. You're saying sometime afterwards he made a written request for it, is that what you're saying? Yes, Your Honor. Did he get a copy of it after he made that request? No. He never got a copy of it? Never got a copy. To this day you don't have a copy of it? To this day we do not, well that is not correct. Through this litigation we have received a copy in discovery. The bottom line here though is that when my client was given advice that there would be no change to her long-term disability benefits, she was entitled to take that advice because she could rely on a fiduciary to give her correct advice. The law is very clear in the case of fiduciaries that you're entitled to rely on them and that's why they're called fiduciaries. In the present case, because she relied on the advice of fiduciaries, she took actions which she would not have taken otherwise. It's clear she would not have taken early retirement otherwise because there would be no possible benefit to her. She would either receive the same amount until the date of her regular retirement and then receive less, or she would receive less until her date of early retirement and then receive less. There is no way she could receive as much as if she had not taken early retirement. There is no way she could receive more than if she had taken early retirement. It was only on the advice that was given to her that she could receive more than she would have had she not taken early retirement. You mentioned you wanted to save a couple of minutes. Yes, Your Honor. Thank you, Your Honor. Good morning. May it please the Court, before I proceed, there is one thing. Could you get your name for the record, please? I'm sorry, Your Honor. It's Joe Fauche from Northrop Grumman Corporation. Thank you, sir. Thank you, Your Honor. I want to mention again that there's one thing I heard during Mr. Bates' remarks that I had not heard previously and it was not raised in the briefs, and that is the notion that the pension plan provision, which is at issue here, which is Section 5.1 of the pension plan, is ambiguous. Well, it is ambiguous, isn't it? Look at the sentence at the end of 5.1a that begins a participant's election. There are three things that that sentence, the entire sentence, talks about. One is the election to commence benefit payments. The second is the form of payment. And the third is a designated beneficiary. I'm leaving out some words between designated and beneficiary. The first half of the sentence says that the participant's election to commence benefits payments, that's one thing, and the form of payment election is effective only if the participant is alive on the retirement date. The second half says the form of payment election and the designated beneficiary can't be changed. But the second half of the sentence notably says nothing about election to commence benefit payments, which is the third item that that sentence covers. Why doesn't that create the very ambiguity that opposing counsel was talking about? That is, the sentence read as a whole says that the form of payment can't change, the designated beneficiary can't change, but it's not clear what happens to that election to commence the benefit payments in the first place. Why isn't that a reasonable reading of that sentence? Judge Graber, it's unfortunate that this issue wasn't raised before this morning and fully briefed, but I think the answer is that the reference to the retirement date would have no meaning whatsoever if it could be read the way Your Honor is suggesting that it might be read. If you elect a form of retirement benefit beginning today, in this case the situation is I'm electing to receive early retirement benefits, therefore I am electing my specified retirement date under the plan. If I could change that after I've elected the retirement date and begun to receive payments commensurate with that election of the early retirement date, then this would make no sense whatsoever. Well, that's maybe the more plausible reading, but I guess just looking at it grammatically, that sentence seems to me to be susceptible of more than one possible reading, which is all that ambiguity requires in the ERISA context. I agree with Your Honor's statement with respect to what it requires, but I would submit that the form of benefit election encompasses the date on which the benefit begins, and that is, in this case, the early retirement date. It would have no meaning whatsoever. The form of the benefit election under a defined benefit pension plan, which this is, includes the date on which you begin retirement, in this plan whether it's a life-only annuity, and in this case whether there's a 10-year certain annuity. Depending on the form of the election, the date on which you begin to receive the benefits, those factors make up the form of the benefit election. So to me, Your Honor, while I agree with Your Honor's statement with respect to what can trigger an ambiguity, I think any reasonable reading of this provision in the facts of this case would put anyone on notice that once they elect to begin receiving benefits, that's the end of it because that's what's required. If we disagree with you, if we were to find that this piece of the plan is ambiguous, what would be the result in view of the fact that equitable estoppel from your briefing applies only when there's an ambiguity, so you've sort of laid the groundwork for that. If we were to conclude that this is ambiguous, what would happen next? Well, then, Your Honor, the court would have to make another finding, and that would have to be that there had been an oral interpretation of the purportedly ambiguous plan term, and on this record that can't be done. There was never any discussion, and there's no evidence in the record that there was any discussion, about any particular plan term, including this Section 5.1. And the Pisciotta case, which is referred to in the briefs and was referred to by Mr. Bache, makes it fairly clear that there has to be an oral interpretation of a specific plan term. If I understand you correctly, then you're saying that the plaintiffs never came forward with evidence that they said, can I change my mind if I don't like what I've elected, or if it turns out not to be to my advantage? You never asked for a construction of this term? That's correct, and I would go one step further, Your Honor. Beyond just this provision in the plan, the documents that the plaintiff signed put the appellant on notice that if she elected a particular form of benefit that it couldn't be changed once benefits began being paid. Let me change the subject slightly, if I may. What do we do with the allegation that the plaintiff called up someone we'll assume to be the agent of the administrator and was given wrong advice? What's the answer to that? Well, I think we assume, Your Honor, that the fact is true for the purpose of the underlying motion for summary judgment and for this appeal. Right. I just don't think it changes the outcome. Okay, why is that? Why don't they have a cause of action if the administrator or the administrator's agent tells them you can do this and it'll be a great thing for you and it turns out to be wrong? Judge Silverman, we have to put it in the context of the claims that has been asserted and that is still being asserted on this appeal, and that is a claim for equitable estoppel under ERISA. So you have to look at those facts and determine whether or not under the Ninth Circuit rules those facts would give rise to a cause of action. They also allege a breach of fiduciary duty, didn't they? They allege a breach of fiduciary duty under ERISA Section 502A3. Okay. Well, can I get a copy of the plan documents? No, Your Honor. That would be, and I understand there was some mention of that. This complaint has no request for penalties under ERISA Section 1132C1, which is referred to in ERISA parlance as 502C1. There is no claim that there was a written, and by the way, Judge Silverman, you asked Mr. Bache what's the significance of a lack of a written request. The significance is that in the absence of a written request, there can be no request or availability for penalties under ERISA Section 502C1. I'm looking at the complaint. I guess it's the amended complaint. Paragraph 37 says, Defendant Arthur Grumman breached its fiduciary duty when it unreasonably refused to provide truthful and correct information. And then Paragraph 40, Defendant should be equitably estopped from denying benefits and from denying her request to reverse her retirement application. Why doesn't that fly? Because it still has to fit within the ambit of an equitable estoppel claim. Also, Your Honor, if we're going to try to pigeonhole this under an ERISA claim, there's two possible breach of fiduciary duty remedies provided under the remedial provisions of ERISA. They're both under 502A. 502A2 provides for recovery of damages for the benefit of the plan in the event of a fiduciary breach. Section 502A3 provides for other appropriate equitable relief. And it's this latter provision that the appellant in this case is attempting to assert her claim under. There's a third option, which has not been alleged in this case, and that would be a benefit claim under ERISA Section 502A1B. A lot of the administrative appeal process claims and litigation relates to those types of claims, but that's not what we have here. So what the plaintiff or the appellant is seeking is an award of equitable relief, which would mandate that Northrop Grumman reverse her early retirement election and put her in the position that she would have been in had she never elected to receive early retirement benefits at all. That's an award of equitable relief under ERISA Section 502A3, although it would have a monetary component to be sure, which, by the way, may or may not have benefited the appellant at the time she made her early retirement election, and that's a key point. The reason that the courts require or eliminate the possibility of oral interpretations of written plans is there needs to be actuarial certainty across the board and across all plaintiffs and across all participants, I should say. And if every participant who claims that they were provided incorrect information or information that was inconsistent with the plan was able to assert that they should be put back in the position that they would have been in had that information not been provided, there would be absolutely no possibility for actuarial certainty, and that is important, especially in the context of a defined benefit plan. What right does a person have if given wrong information? What could she do? In the Ninth Circuit, and given the claims at issue in this case, if she had asked a question with respect to a provision in the plan that was ambiguous and a fiduciary said to the participant information that was inconsistent with that, interpreting that ambiguous information. Okay, that's not what we have here, right? That is not what we have here. Suppose what we have here is someone says, well, how is this going to affect my long-term disability, or how is this going to affect Social Security? And then it's given wrong information. What remedy, if any, would she have? I don't think there would be a remedy available under that, Your Honor, because there can be no oral interpretation of a written plan term. Just misinformation, just tough luck? Under the law of the Ninth Circuit, I think essentially that's the case. That's the nature of ERISA, right? That is the nature of ERISA. ERISA cuts off an awful lot of claims that people might have. In fact, in the early days, there was an awful lot of fighting about, well, an insurance company couldn't do that, but that's the nature of ERISA, isn't it? Well, that's one component of ERISA. What I mean is one part of ERISA is you're stuck with those kinds of rules. Well, it eliminates the prospect of punitive damages. It eliminates the prospect of extra-contractual damages, which, by the way, is how this case started, which was on a separate case with respect to a claim for all sorts of extra-contractual relief, which the courts have eliminated. And if the court takes a look at the district court's determination, I mean, we're fighting on a particular battleground, and the battleground was chosen by the appellant. It's set forth in her complaint, and it's a claim for equitable estoppel. That's the claim that the court has to address. I'm not aware of any authority within the Ninth Circuit that would allow the plaintiff to receive the relief that she's seeking outside the context of that equitable estoppel claim. The appellant cites two relatively early Third Circuit cases and a District of Columbia appellate court decision, the Eddy case and then the Bixler case from the Third Circuit. But those cases are clearly inconsistent with the Ninth Circuit's authority with respect to equitable estoppel claims, and they don't specifically address equitable estoppel in those cases. I do also think that they are, since they predate both the Supreme Court's Mertens decision and the Supreme Court's Great West decision, as one court within the Circuit has recognized, the Bertozzi case in the Northern District recognized that both Eddy and Bixler are of questionable ongoing validity. The other issue that's been raised in the briefs is whether the silence in the retirement plan, the pension plan, with respect to the issue of what impact, if any, an election of early retirement benefits would have on the disability plan might constitute an ambiguity.  I submitted no authority for the proposition that silence in a plan document constitutes authority, and in my research, in preparing for the briefs and in preparing for this hearing, I came across no authority that said that the total absence of any mention of any particular issue constitutes an ambiguity. And I would submit that it does not. No plan can be charged with the idea of anticipating every possible event that might arise, especially when it bears upon the issue that we're talking about, bears upon a separate plan altogether, in this case the disability plan. As you noted, Judge Silverman, and for one point of clarification, there was an appeal in this case to UNUM. That appeal appears to have been abandoned. So the manner in which UNUM administered the disability plan once the early retirement benefits had been elected was the subject of an appeal to UNUM that was not ultimately pursued by the appellant. So is that to put? Actually, no. I mean, there's no evidence in the record of this fact, but the fact of the matter is that the appellant has received the level of disability benefits to which she was entitled under that plan through the course of this litigation. But that's not directly at issue in this case. Even if that was not the case, there would be no remedy given the cause of action that's been asserted by the appellant in this case. Unless any of your honors have any additional questions for me, I'll cede my additional time. Thank you, Mr. Poche. Thank you, Your Honor. Patience. Almost three minutes left, sir. Thank you, Your Honor. First of all, regarding the ambiguousness of the term regarding the ability to change the early retirement decision. If you look at the provision at issue, between the issue of the participant's election to commence benefits in the form of payments, there's a semicolon as opposed to a comma. And after that semicolon, it refers to the form of a payment election and the designation of joint beneficiaries cannot be changed. You call up and say, gee, what does this mean? And they, you know, hey, I can't figure this out. It's ambiguous. Construe it for me. No, what happened was my clients, when this provision was brought to their attention, they went to Florberg. Florberg told them, you can go to our committee and have them interpret that and reverse the decision to take early retirement, and that's what they did. They went to Northrop Grumman. That was after they already made the election. That was after they made the election. I'm talking about the phone call that's the centerpiece of this, where they call up to get advice from the service center. They had no way of knowing this provision existed because they had not been given the planned documents that they requested. So they didn't get an oral construction of this ambiguous term. They did not get any interpretation of this ambiguous term. They were not told this ambiguous term existed. I'm kind of at a loss to understand how your estoppel claim can work then. The estoppel claim works because the issue here is whether the statement that taking early retirement as opposed to regular retirement will not affect your long-term disabilities, whether that's ambiguous. Under the plan, there being no language to the contrary, the representation rendered the plan ambiguous as to the coverage that the employee would be entitled to. The estoppel issue stops them from claiming this paragraph should be interpreted as barring the change of the early retirement date. That's simply what's equitable. Thank you very much. Thank you, Your Honor. Mr. Poche, thank you as well. The case just argued is submitted. Before we adjourn, I want to acknowledge we have a distinguished visitor in the courtroom, Judge Fred Scullin from the Northern District of New York. Mrs. Scullin, nice to see you. We'll see you tomorrow. Thank you. We'll stand at recess.
judges: Fernandez, Silverman, Graber